IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JULIE GIBSON ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-cv-893-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Julie Gibson Adams ("Plaintiff" or "Adams") originally applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, on December 14, 2007. Tr. 109-113. After being denied, Adams timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on December 4, 2009. Tr. 9-25. Adams subsequently petitioned for review to the Appeals Council who rejected review of Adams's case on October 1, 2010. Tr. 1-5. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

### I. NATURE OF THE CASE

Adams seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct

limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Adams, age 42 at the time of the alleged onset, completed the tenth grade, Tr. 54-55, and has a GED. Tr. 133, 328. Adams performed past relevant work as a part-time manager of Buddy's Corner from March to August in the years 2007, 2008, and 2009. During this time, she worked twenty hours per week. Tr. 193, 328, 334. She has worked after the alleged disability onset date, but this work did not rise to the level of substantial

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

gainful activity. Tr. 14. Adams meets the insured status requirements of the Social Security Act through September 30, 2011. Tr. 14. Adams testified that she can not work because of heart disease that causes chest pains, dizziness and numbness. Tr. 37. Adams claims that she suffers from daily numbness in her fingers and toes. Tr. 38.

The ALJ found that Adams has severe impairments of coronary artery disease, chronic obstructive pulmonary disease, and mild depression, but that Adams did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments. Tr. 14-15. The ALJ concludes from the entire record that Adams has the residual functional capacity to perform sedentary work. Namely Adams can lift up to 10 pounds; sit for 8 hours; stand/walk for 2 hours, altering positions at 2 hour intervals. She is restricted to lower stress positions, but she is able to perform work-related mental activities generally required by competitive, remunerative work at the unskilled or semi-skilled levels. Tr. 16. From the testimony of the Vocational Expert ("VE"), the ALJ found "although the claimant's additional limitations do not allow the claimant to perform the full range of sedentary work, considering the claimant's age, education and transferable work skills, a finding of 'not disabled' is appropriate." Accordingly, the ALJ accepted the VE's testimony that Adams could perform the jobs of assembler, surveillance system monitor and call out operator, all existing nationally and in the State of Alabama. Tr. 20.

### V. ISSUES

Adams raises two issues for judicial review:

(1) Whether the ALJ's finding of Adams' residual functional capacity is not supported by substantial evidence.  *See* Doc. 13 at 7.

(2) Whether the ALJ failed to properly evaluate the opinion of Dr. Meadows.  *See* Doc. 13 at 13.

## VI.  DISCUSSION

### I.  The RFC assessment by the ALJ rests upon substantial evidence.

A residual functional capacity ("RFC") assessment is used to determine the claimants' capacity to do as much as they are possibly able to do despite their limitations. *See* 20 C.F.R. § 404.1545(a)(1) (2010).  An RFC assessment will be made based on all relevant evidence in the case record.  *Id.*; *Lewis*, 125 F.3d at 1440.  At an ALJ hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity."  20 C.F.R. § 404.1546(c) (2010).  The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010).  The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources.  *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988)(The ALJ is not required to order a consultative examination unless the record establishes it is necessary to render a fair decision).  The ALJ's finding must be supported by substantial evidence.  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would

accept as adequate to support a conclusion." *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005)(citations omitted).

On December 3, 2007, Adams saw Dr. Richard L. Bendinger, D.O. (Doctor of Osteopathic Medicine) from Family Practice Center of Abbeville. Dr. Bendinger diagnosed Adams as suffering from chest pain, hypertension, anxiety, depression and sinusitis. Tr. 244. On December 18, 2007 Adams saw Dr. David D. Gayle, M.D., a Cardiology specialist. Dr. Gayle diagnosed Adams as suffering from coronary artery disease, hypertension, diabetes, dyslipidemia and a renal cyst. Tr. 234-35. Dr. Gayle noted Adams underwent bypass grafting in 1999, but that she failed to return to his office for follow-up and that she and been seen once in the hospital in 2005 for evaluation of her chest pain. Again Adams did not appear for her follow-up appointments. Tr. 233. With respect to the coronary artery disease, Dr. Gayle noted "[n]o active cardiac problems at this time" and recommended that Adams return to the cardiology clinic for follow up in six months or sooner if needed. Tr. 234-35.

On April 13, 2008, Adams was admitted to the Southeast Alabama Medical Center with chest pain and seen by Dr. Thomas Young, M.D. Tr. 276-77. Dr. Young noted that she "is totally noncompliant with medications." She was started on Coumadin in 2000 for a pulmonary thromboembolism and "weaned herself off" because she did not like how it made her feel. She also rarely takes her Glimepiride which was prescribed for diabetes. Tr. 276. On April 15, 2008, Dr. Gayle performed a dual chamber ICD Implant procedure on Adams. Tr. 284. Adams returned to Dr. Gayle in July 2008 for followup on her defibrillator implant. He noted that she had "done quite well" since her hospitalization

for the defibrillator implant. He further noted that "[s]he understands the value of exercise and anticipates getting back into a more common routine for exercise and also to be more diligent with her diet. She is happy to be free of chest pain and shortness of breath." Tr. 320.

Adams saw by Dr. Bendinger twice in November, 2008 because of right leg pain and a cold foot and depression. Tr. 358-59. On January 31, 2009, Adams went to the Southeast Alabama Medical Center Emergency Department with heart palpitations and near syncope. Tr. 311. Adams was seen again by Dr. Gayle on February 25, 2009, and he noted that since her last visit she has had problems with "tachypalpitations and fluttering." Tr. 321. Dr. Gayle saw Adams again on September 3, 2009 and he summarized her interim history as follows:

> Since her last visit, Ms. Adams has been doing well without any recurrent tachypalpitations and has avoided cardiac stimulants and caffeine. She has had no recurrent symptomatic angina and she required no sublingual nitroglycerine since last visit. Her blood pressure has been under good control on current medications, all of which are available through the Wal-Mart $4 plan. Tr. 367.

In October 2009, Randall Jordan, a Licensed Clinical Psychologist, performed a consultative psychological examination on Adams. Tr. 325-331. The examination reveals that Adams had normal speech, congruent affect; intact concentration; normal short-term and remote memory; normal abstraction; average intelligence; and normal judgment and insight. Tr. 329. Jordan opined that Adams had a moderately severe depressive disorder. Tr. 329-330. He concluded that Adams could function independently; carry out and remember simple, one step instructions; perform multi-step

tasks without supervision; but that her "ability to respond well to coworkers, supervision and everyday work pressures is compromised to a limited degree due to psychiatric issues. This claimant's primary limitations are more physical in nature and do contribute to depressive problems." Tr. 330. Jordan completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" form, in which he opined Plaintiff was not limited in her ability to understand, remember, and carry out simple instructions; moderately limited in her ability to understand remember, and carry out complex instructions; mildly limited in her ability to interact appropriately with others; and moderately limited in her ability to respond appropriately to usual work situations and changes. Tr. 325-26.

In October 2009, Dr. Richard Meadows, D.O. (Doctor of Osteopathic Medicine) from Family Practice Center of Abbeville saw Adams for a Disability Examination. Tr. 332-349. Adams told Dr. Meadows that she experiences regular chest pain which began in May 1999. Tr. 332. Adams also complained of pain in her legs, feet, shoulders, wrists and thumbs with numbness and said that walking more than twenty-five feet caused her to feel light-headed. Tr. 333. She said that sitting or standing caused her feet to swell and become painful, a condition that was improved only by elevating her feet. Tr. 333. Dr. Meadows noted that Adams "does become fatigued fairly readily with minimal exertion such as walking in the room." Tr. 335. She was able to toe walk, heel walk, and squat, and her strength was normal in all areas and an EKG was unremarkable. Tr. 336.

Dr. Meadows completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form, in which he opined Plaintiff could occasionally lift

up to ten pounds; sit for six hours at a time, for a total of seven hours per day; stand for one hour at a time, for a total of one hour per day; walk for 30 minutes at a time, for a total of one hour per day, occasionally reach, frequently handle, finger or feel; occasionally kneel; and never climb, balance, stoop, crouch or crawl. Tr. 338-341. Dr. Meadows further opined "I feel that her coronary artery disease is significant and its significant to the point that it impairs her ability to function or to walk more than twenty-five yards, maybe even as little as twenty-five feet before she gets short of breath and, after a period of time, would just fatigue out. Certainly, it does increase her risk for increased angina when she exerts herself." Tr. 337.

Adams argues that the ALJ's finding of her RFC is not supported by substantial evidence. Specifically, she argues that the ALJ's finding of her RFC is in conflict with the weight she assigned to the opinion of Dr. Meadows and Dr. Jordan.[5] Indeed, the ALJ states that she gave "determinative weight" to the opinion evidence of Dr. Meadows and "significant weight" to the opinion evidence of Randall Jordan, psychologist.

Adams complains that the ALJ failed to include in the RFC Dr. Meadows' opinion that Adams could never balance, stoop[6], crouch, crawl, climb ladders or scaffolds, stairs

---

[5] Adams also argues that the ALJ erred in finding that the State Agency Medical Consultant's opinion is consistent with the medical evidence of record and supportive of the RFC. The Court notes the consultant's opinion of Adams' RFC does differ somewhat from the RFC which the ALJ ultimately adopted and which he posited to the VE. Indeed, the consultant's opinion included a number of less restrictive factors which were not adopted by the ALJ, but which the records of treating physician, Dr. Gayle, supported. Tr. 234-235, 320, 367.

[6] Adams argues Dr. Meadows finding that she can "never stoop" does not support the RFC adopted by the ALJ. *See* Doc. 13 at p.9. She cites Social Security Regulation 96-9p which states "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually

or ramps and could only kneel occasionally. Tr. 341. Additionally, she complains that the ALJ failed to include in the RFC Dr. Meadows' opinion which limited her to walking for thirty minutes without interruption and to sitting for seven hours in an eight hour day and limited her environmental exposure Tr. 342. The Court notes that these limitations are not specifically included in the RFC which the ALJ presented to the VE.

The ALJ recognized, however, that Meadows also opined Adams could perform activities such as traveling without assistance, ambulating independently, using public transportation, climbing a few steps at a reasonable pace, preparing simple meals, feeding herself, caring for her personal hygiene, and using paper and files. Tr. 343. Furthermore, the ALJ relied on the medical findings of Adams' treating cardiologist, Dr. Gayle. Tr. 18. Indeed, Dr. Gayle's records reflect that in December 2007, six months after Adams' alleged onset of disability, Plaintiff had "no active cardiac problems." Tr. 234-35. In July 2008, Dr. Gayle indicated Adams had done "quite well" since having a defibrillator implanted and suffered no chest pain or shortness of breath. Tr. 320. Again, in September 2009, he continued to indicate Adams was "doing well." Tr. 367. As a treating physician, Dr. Gayle's testimony must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis, supra,* at 1440. Additionally, more weight is usually given to a specialist's opinion about medical issues

---

apply." However, the ALJ recognized the claimant had "additional limitations" which prevented claimant from performing "the full range of sedentary work" , but "considering claimant's age, education and transferable work skills" she concluded Adams was not disabled. Indeed, based on this conclusion, the VE found Adams could perform the jobs of assembler, surveillance system monitor and call out operator. Tr. 20.

related to his or her area of specialty than to a non-specialist's opinion. 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).

Similarly, Adams complains that the ALJ failed to include in the RFC Randall Jordan's opinion that she had "moderate" limitations in her ability to "understand and remember complex instructions", "carry out complex instructions" and "make judgments on complex work-related decisions, and "moderate" limitations in her ability to "[r]espond appropriately to usual work situations and to changes in a routine work setting." Tr. 325-26. The ALJ recognized, however, that Jordan also found Adams' ability to remember and carry out simple, one-step instructions was not compromised and that Adams could perform multi-step tasks without supervision. Tr. 19, 325-26

While there may exist some differences within the different medical opinions, it is uncontroverted, however, that Dr. Meadows did not conclude Adams was unable to perform sedentary work, Tr. 338-341, and Jordan opined that Adams could perform non-complex work. Tr. 330. Indeed, the ALJ recognized claimant had additional limitations which did not allow her to perform the full range of sedentary work. Tr. 20. The ALJ concluded, however, that based on the claimant's age, education and transferable work skills, there were work options available to Adams. *Id.* Indeed, the VE found that Adams could perform the jobs of assembler, surveillance system monitor and call out operator. *Id.*

Additionally, there is medical evidence showing that Adams had been noncompliant with her prescription medication regimen and other medical evidence from Dr. Gayle showing that early in his treatment of Adams she had failed to seek follow up

in his office.  Tr. 233, 273.  Further, in spite of Adams' claims of functional limitations and weakness, Dr. Meadows reported normal muscle strength in all areas.  Tr. 336.  Thus, the Court concludes based on the evidence as a whole that the ALJ's determination of the RFC is supported by substantial evidence.  *See Phillips v. Barnhart,* 357 F.3d 1232,1238 (11th Cir. 2004) (quoting 20 C.F.R.§ 404.1520 (e)(the ALJ will "assess and make a finding about the [claimant's] residual functional capacity based on all the relevant medical and other evidence.")

### II.  The ALJ properly evaluated the opinion of Dr. Meadows.

In making her findings, the ALJ considered all of the evidence including medical records and opinion evidence.  The ALJ gave the records and opinion of Dr. Meadows "determinative weight."  Tr. 19.  Dr. Meadows saw Adams for a Disability Examination in October, 2009.  Tr. 332-349.  Adams complained that she experiences regular chest pain which began in May 1999.  Tr. 332.  She also complained of pain in her legs, feet, shoulders, wrists and thumbs with numbness and said that walking more than twenty-five feet caused her to feel light-headed.  Tr. 332.  She said that sitting or standing caused her feet to swell and become painful, a condition that was improved only by elevating her feet. Tr. 333.

The record does not reflect, however, that Adams complained of experiencing the extreme functional limitations she expressed to Dr. Meadows to any other physician.  A claimant's statements about pain or other symptoms do not alone establish disability.  Indeed, supporting medical evidence demonstrating an impairment which could reasonably be expected to produce the symptoms complained of must be present.  *Holt v.*

*Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991)  (citations omitted).

Dr. Meadows noted that Adams "does become fatigued fairly readily with minimal exertion such as walking in the room."  Tr. 335.  However, he also noted Adams was able to toe walk, heel walk, and squat, and her strength was normal in all areas and an EKG was unremarkable.  Tr. 336.  Dr. Meadows also  opined Adams could perform activities such as traveling without assistance, ambulating independently, using public transportation, climbing a few steps at a reasonable pace, preparing simple meals, feeding herself, caring for her personal hygiene, and using paper and files.  Tr. 343.

Dr. Meadows completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form, in which he opined Plaintiff could occasionally lift up to ten pounds; sit for six hours at a time, for a total of seven hours per day; stand for one hour at a time, for  a total of one hour per day; walk for 30 minutes at a time, for a total of one hour per day, occasionally reach, frequently handle, finger or feel; occasionally kneel; and never climb, balance, stoop, crouch or crawl.  Tr. 338-341.  Dr. Meadows further opined "I feel that her coronary artery disease is significant and its significant to the point that it impairs her ability to function or to walk more than twenty-five yards, maybe even as little as twenty-five feet before she gets short of breath and, after a period of time, would just fatigue out.  Certainly, it does increase her risk for increased angina when she exerts herself."  Tr. 337.

In conducting his examination, Dr. Meadows did not indicate that he had reviewed the other medical evidence of record including the benign findings of Meadow's treating cardiologist, Dr. Gayle and his opinion that Adams was doing well.  Tr. 320.  Indeed, "the

report of a consulting physician who examined claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Kent v. Sullivan,* 788 F. Supp. 541, 544 (N.D. Ala. 1992). Moreover, the opinion of Dr. Gayle, a cardiac specialist, is due to be given more weight than that of Dr. Meadows, a non specialist. *King v. Barnhart,* 320 F. Supp. 2d 1227, 1231-32 (N.D. Ala. 2004)(*citing* 20 C.F.R.§ 404.1527(d)(5)). Additionally, Dr. Meadows failed to recognize the observations of Dr. Young that Adams had been non-compliant with her medications and the observations of Dr. Gayle that early in his treatment of her Adams had failed to return to his office for followup. Tr. 276,233. Indeed, the failure to follow treatment, which could restore the ability to work, can be a reason to deny benefits where no good reason exists for the failure. *Lucas v. Sullivan,* 918 F.2d 1567, 1571 (11th Cir. 1990). Accordingly, the Court concludes that the ALJ properly evaluated the opinion of Dr. Meadows.

## VII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

DONE this 14th day of November, 2011.

/s/ Terry F. Moorer
TERRY F.   MOORER
UNITED STATES MAGISTRATE JUDGE